IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00489-REB-MEH

ELLIS DANIEL BASTIAN,

    Plaintiff,

v.

JOSEPH FORTUNATO, M.D.,
BRIAN WEBSTER, Physician Assistant,
JOHN STOCK, Physician Assistant,
KATHY RITTENHOUSE, Physician Assistant,
CATHY HOLST, ADA Inmate Coordinator, and
ANN COOPER, Prison Operations,

    Defendants.

---

### RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendants' Motion to Dismiss ("Motion") [filed June 26, 2008; docket #18]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L.Civ.R 72.1.C, the motion has been referred to this Court for recommendation. The motion is fully briefed, and oral argument would not materially assist the Court in adjudicating this motion. For the reasons stated herein, the Court **recommends** that Defendants' Motion be **granted**.

**I.    Background**

Plaintiff filed this 42 U.S.C. § 1983 action on April 18, 2008. Plaintiff alleges "deliberate indifference" and "denial of medical treatment" in violation of Plaintiff's constitutional rights against Defendants Dr. Joseph Fortunato, Physician Assistants Brian Webster, Joan Stock, and Kathy Rittenhouse, ADA Inmate Coordinator Cathy Holst, and Prison Operations Officer Ann Cooper. Construing Plaintiff's Amended Complaint liberally, this Court infers Plaintiff's cause of

action relies on the Eighth Amendment protection against cruel and unusual punishment. In essence, Plaintiff claims Defendants were deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment by failing to transfer Plaintiff to Denver Health Medical Center ("Denver Health") for treatment of injuries allegedly sustained while Plaintiff was held at Boulder County Jail, and Defendants' deliberate indifference to Plaintiff's medical needs caused Plaintiff to suffer permanent damage.

Plaintiff alleges he sustained an injury to his head "by falling" on or about June 2005 at the Boulder County Jail. (Am. Compl. 4.) Plaintiff was subsequently transferred to Washington County Jail, where the staff transported Plaintiff to Denver Health for evaluation of his injuries. Plaintiff states he "was seen numerous times by the Washington County Jail medical staff for injuries sustained while in Boulder County Jail." (*Id.*) Plaintiff then was transferred in October 2005 to the Colorado Department of Corrections Diagnostic and Receiving Center, where Plaintiff "was taken numerous times to the Denver Health" to be examined by Ear, Nose, and Throat (ENT) medical personnel. (*Id.*) He states he was also evaluated by the Adams County Jail medical staff, who transported him to Denver Health for follow-up ENT appointments. (*Id.* at 5.)

Approximately ten months later in April 2006, Plaintiff was transferred to Sterling Correctional Facility, where he alleges interaction with each named Defendant. He states he informed the Defendants of his pending appointment at Denver Health, and that Defendants confirmed their knowledge of the appointment. He also states Defendants indicated their awareness of his appointment for an MRI, as well as his symptoms of memory loss, problems with equilibrium, and continued loss of hearing. (*Id.*) After his transfer to the Sterling Correctional Facility, Plaintiff contends he was examined by Sterling Correctional Facility medical staff, including Dr. Fortunato during multiple "consultations," Physician Assistant (P.A.) Webster on at least three occasions, P.A.

Stock at least twice, and P.A. Rittenhouse at least once, for the alleged injuries Plaintiff sustained while at Boulder County Jail. (*Id*. at 6-7.) However, he states Defendants advised him they "would not honor any appointments that were scheduled at Denver Medical Health Center." Furthermore, Plaintiff alleges Defendants have "refused to provide reasonable medical treatment . . . as outlined by the attending physicians at Denver Health." (*Id*. at 5.)

Defendants filed the Motion to Dismiss presently before the Court on June 26, 2008. Defendants argue they were not deliberately indifferent to Plaintiff's medical needs because Plaintiff's right to medical care was afforded, and Plaintiff's disagreement with the quality of the care or advised course of treatment does not implicate a violation of Plaintiff's constitutional rights. Furthermore, Defendants allege Plaintiff's complaint identifies Defendants Holst and Cooper as parties but does not specifically assert claims against them. Defendants also assert qualified immunity as an affirmative defense.

Plaintiff filed a "Motion to Show Cause why Action should not be Dismissed" on August 5, 2008, which the Court construes as a Response to Defendants' Motion to Dismiss. In his response, Plaintiff argues it is not his disagreement with prison medical personnel that implicates deliberate indifference, but the refusal of the prison medical personnel to comply with orders issued by the Denver Health ENT doctor. Plaintiff contends Defendants' failure to facilitate his "imperative" further treatment by Denver Health is sufficiently harmful to constitute deliberate indifference.

**II.     Discussion**

   ***A.     Standard for Failure to State a Claim***

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most

favorable to the plaintiff. *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007); *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1968-69 (2007). The complaint must sufficiently allege facts supporting all of the elements necessary to establish an entitlement to relief under the legal theory proposed. *Lane v. Simon*, 2007 WL 2136579, *3 (10th Cir. July 26, 2007). The Tenth Circuit determined a prisoner is "merely required to provide 'a short and plain statement' of his Eighth Amendment claims, and 'malice, intent, knowledge, and other condition of mind of a person may be averred generally' in the complaint." *Beauclair v. Graves*, 227 F.App'x 773, 776 (10th Cir. 2007) (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1294 (10th Cir. 2006)).

A court must construe a pro se document liberally, and such document must be held to less stringent standards than those drafted by lawyers. *Erickson*, 127 S. Ct. at 2200 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Tenth Circuit interpreted this rule to mean "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

### B. § 1983 Affirmative Link Requirement

In a § 1983 claim, Plaintiff must allege an affirmative link between the Defendants' conduct and any constitutional violation in his Complaint. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156 (10th Cir. 2001) (citing *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991)). In order for a prison official to be liable for "deliberate indifference" under § 1983, "the

official must have been personally and directly responsible for the occurrence of the alleged Eighth Amendment violation." *Jenkins v. Denver County Jail*, 203 F.3d 835, 2000 WL 84893, at *2 (10th Cir. Jan. 27, 2000).

### C.     *Deliberate Indifference*

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle,* 429 U.S. at 103). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura*, 461 F.3d at 1291). The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F.App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair*, 227 F.App'x at 776 (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

A prisoner's difference of opinion with the prison's medical staff does not rise to the level of a constitutional violation. *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993); *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (stating "a difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983"). The Tenth Circuit determined "a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Callahan*, 471 F.3d at 1160 (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). Decisions such as a preferred course of treatment are based on medical judgment and are outside of the Eighth Amendment's scope. *Id.* (quoting *Estelle*, 429 U.S. at 107).

Plaintiff must show "deliberate refusal to provide medical attention, as opposed to a particular course of treatment." *Fleming v. Uphoff et al.*, 210 F.3d 289, 2000 WL 374295, at *2 (10th Cir. April 12, 2000) (quoting *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). The Supreme Court concluded "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical

decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. Such difference of opinion may amount to medical malpractice which is not actionable under § 1983. *Braxton v. Wyandotte County Sheriff's Dep't*, 206 F.App'x 791, 793 (10th Cir. 2006) (citing *Kikumura*, 461 F.3d at 1291).

**III. Analysis**

Plaintiff's three asserted claims reiterate one cause of action based on deliberate indifference to his medical needs in violation of the Eighth Amendment. The Court addresses Plaintiff's claims of deliberate indifference against each Defendant in turn, summarizes its deliberate indifference conclusions, and then evaluates the qualified immunity defense raised by Defendants.

*A.     Dr. Fortunato*

Plaintiff identifies Dr. Fortunato as the Chief Medical Officer for Sterling Correctional Facility. (Am. Compl. 2.) Plaintiff states Dr. Fortunato examined him in April 2006, and that Dr. Fortunato was aware of the extent of Plaintiff's injuries including "severe headaches, blackouts, equilibriam [sic] problems, loss of hearing that has now become almost complete." (*Id*. at 5.) Plaintiff describes how he then "sent medical kites asking to see Dr. Fortunato" and was seen again for his "existing medical problems." (*Id*. at 6.) Plaintiff alleges Dr. Fortunato suggested he purchase pain reliever in response to Plaintiff's medical complaints, stated there was nothing more he could do for Plaintiff, and told Plaintiff he would not be transferred to Denver Health for further treatment despite the existing appointments. Dr. Fortunato then transferred Plaintiff's file to P.A. Webster. Plaintiff contends Dr. Fortunato was aware of the Denver Health physicians' decisions that "further treatment, diagnostic procedures, and follow up medical appointments by qualified specialist [sic] were necessary for the proper treatment" of Plaintiff. (*Id*. at 8.)

Plaintiff articulates an affirmative link requisite for a § 1983 claim connecting Dr. Fortunato

7

personally and directly to Plaintiff's allegations of deliberate indifference because Dr. Fortunato examined Plaintiff in response to Plaintiff's requests for medical care and told Plaintiff he would not attend the follow-up appointments scheduled at Denver Health. These facts as described by Plaintiff also satisfy the general averment of knowledge on behalf of Dr. Fortunato.

Regarding the test for deliberate indifference, the objective component requires a sufficiently serious medical need implicating the Eighth Amendment. In this case as alleged by Plaintiff, the head trauma sustained by Plaintiff causing loss of memory, equilibrium problems, and continued loss of hearing was diagnosed by Denver Health ENT doctors to necessitate further treatment. Arguably, a lay person would also recognize loss of hearing as a sufficiently serious medical need. Therefore, Plaintiff meets the objective component of a sufficiently serious harm implicating the Eight Amendment.

Satisfying the subjective component requires Plaintiff to demonstrate Dr. Fortunato consciously disregarded a substantial risk of harm to Plaintiff and failed to take reasonable measures to abate such harm. Tenth Circuit precedent recognizes lifelong handicap or permanent loss as substantial harm. Plaintiff alleges continued and almost complete loss of hearing, which constitutes a potentially lifelong handicap or permanent loss. However, in his Response Plaintiff addresses Defendants' contention that "differences of opinion between a prisoner and physicians concerning the need for treatment or the adequacy of treatment do not constitute deliberate indifference." (Defs.' Mot. to Dismiss 4.) Plaintiff states "the [difference of] opinion was between an [ENT] Doctor at Denver [Health] and CDOC Medical Staff." (Pl.'s Resp. to Defs.' Mot. to Dismiss 1.)

In the unpublished decision *Fleming v. Uphoff et al.*, the Tenth Circuit addressed similar circumstances. 210 F.3d 389, 2000 WL 374295 (10th Cir. April 12, 2000). In *Fleming*, the plaintiff brought a § 1983 claim for deliberate indifference. The plaintiff alleged the state defendants refused

8

to allow plaintiff to keep an appointment at the Veterans Administration Center in Denver, and the prison institution's contracted health care service provider denied approval for medical tests requested by both Veterans Administration doctors and a private doctor. The district court denied the plaintiff's action for failure to state a claim; the Tenth Circuit affirmed on the grounds that "plaintiff's complaint alleged only a difference of opinion regarding the type and timing of medical treatment, which did not constitute actionable deliberate indifference." *Fleming*, 2000 WL 374295, at *2. The Tenth Circuit reiterated "neither medical malpractice nor disagreement with medical judgment constitutes an Eight Amendment violation." *Id*. (citing *Estelle*, 429 U.S. at 106; *Green*, 108 F.3d at 1303). To show deliberate indifference in such a situation, the plaintiff "must show a deliberate refusal to provide medical attention, as opposed to a particular course of treatment." *Id*.

The subjective component gives the Court pause in deciding this matter. Plaintiff summarizes the grounds for his deliberate indifference claim in that Dr. Fortunato has "refused to provide reasonable medical treatment to the Plaintiff as outlined by the attending physicians at Denver Health Medical Center." (Am. Compl. 5.) As admitted in his Response, Plaintiff bases this claim on a difference of medical opinion between Dr. Fortunato and the Denver Health ENT doctor. Dr. Fortunato conducted at least two medical examinations of Plaintiff as Plaintiff requested, suggested Plaintiff purchase pain reliever from the canteen, and referred Plaintiff to further medical evaluation by the prison Physician Assistants, thereby providing medical attention within Dr. Fortunato's "independent professional judgment."[1] (*Id*. at 4-5.) As held by the Tenth Circuit, an exercise of medical judgment as to the course of treatment without a showing of deliberate refusal to provide medical attention does not represent cruel and unusual punishment and is not actionable under the Eighth Amendment. *Fleming*, 2000 WL 374295, at *3 (citations omitted). Therefore, the

---

[1] *Callahan*, 471 F.3d at 1160 (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)).

Court finds Plaintiff has failed to state a claim against Defendant Dr. Fortunato.

### B. *Physician Assistants Brian Webster, Joan Stock, and Kathy Rittenhouse*

Plaintiff identifies Physician Assistant Brian Webster ("P.A. Webster") as a physician assistant employed by the Colorado Department of Corrections "who was present and medically treated Plaintiff at all times relevant to this complaint." (Am. Compl. 2.) Dr. Fortunato initially transferred Plaintiff's medical file to P.A. Webster. Plaintiff asserts P.A. Webster told him "he also was aware of the injury Plaintiff had suffered but was unable to honor the treatments that were suggested" by the Denver Health doctors. (*Id*. at 6.) Plaintiff was seen again by P.A. Webster in July 2007 for headaches and loss of hearing, which Plaintiff states "was becoming increasingly worse to the point that Plaintiff was having difficulty heaing [sic] announcements on the intercom in the housing area." (*Id*. at 7.) According to Plaintiff, P.A. Webster, like Dr. Fortunato, also said there was nothing further he could do. (*Id*.)

Plaintiff identifies Physician Assistant Joan Stock ("P.A. Stock") as a physician assistant also employed by the Colorado Department of Corrections "who has been and continues to show a deliberate indifference to Plaintiff's medical needs." (*Id*. at 2.) Plaintiff states P.A. Webster transferred his medical file to P.A. Stock. Plaintiff describes how upon hearing from Plaintiff about the continuing conditions of his injury, P.A. Stock said she would check on the status of the Denver Health appointments and recommended he "seek relief through the grievance process because there was nothing in the way of effective treatment that she could offer through the services of Sterling Medical Department." (*Id*. at 7.) During a follow-up appointment with P.A. Stock, Plaintiff asserts P.A. Stock told him an appointment with Denver Health had been scheduled but she was limited in what she could tell him "for security reasons." (*Id*.)

Physician Assistant Kathy Rittenhouse ("P.A. Rittenhouse") is identified by Plaintiff as

10

formerly employed by the Colorado Department of Corrections, "who at all times relevant to this complaint denied Plaintiff medical treatment and acted with a deliberate indifference to Plaintiff's medical needs." (*Id*. at 3.) Plaintiff discovered P.A. Rittenhouse was handling his medical file when he sought to see P.A. Stock to inquire about the Denver Health appointment and was referred to P.A. Rittenhouse. Plaintiff states P.A. Rittenhouse told him "there were to be no trips to [Denver Health] for Plaintiff," and "there was nothing that could be done to facilitate treatment of the ongoing problems" Plaintiff complained about. (*Id*. at 7.)

The analyses for Physician Assistants Webster, Stock, and Rittenhouse mirror that for Dr. Fortunato. Plaintiff properly alleges facts connecting each P.A. personally to his contentions of deliberate indifference. As previously stated, the objective prong of the deliberate indifference standard is indeed met by the nature of his asserted injury. However, the subjective prong again fails, because Plaintiff's claim is not based on lack of medical attention, but on the differing conclusions than those of Denver Health made by the prison medical personnel who attended to Plaintiff. Again, an exercise of medical judgment as to the course of treatment without a showing of deliberate refusal to provide medical attention does not represent cruel and unusual punishment and is not actionable under the Eighth Amendment. *Fleming*, 2000 WL 374295, at *3 (citations omitted). Plaintiff's stated facts recognize he received medical attention, only he received such attention in a way he perceives as contrary to Denver Health's prescribed course of treatment. Such a claim does not implicate cruel and unusual punishment, therefore, the Court finds Plaintiff has failed to state a claim against Physician Assistants Webster, Stock, and Rittenhouse.

### C.  *Defendants Holst and Cooper*

Plaintiff identifies Defendant Holst as the Americans with Disabilities Act Inmate Coordinator and Defendant Cooper as a Prison Operations officer. Plaintiff contends Defendant

Holst "failed to evaluate medical conditions as to make a determination as to Plaintiff's disability needs." (Am. Compl. 3.) Plaintiff alleges Defendant Cooper "failed to provide the Plaintiff adequate medical treatment by failing to transport plaintiff to scheduled medical appointments." (*Id.*) Plaintiff asserts Defendants Holst and Cooper's awareness of "the Physcians' [sic] decision that further treatment, diagnostic procedures, and follow up medical appointments by qualified specialist [sic] were necessary for the proper treatment of Plaintiffs' injuries and medical needs." (*Id*. at 8.)

Other than these vague and conclusory statements, Plaintiff does not articulate any facts establishing an affirmative link demonstrating Defendants Holst and Cooper were personally and directly responsible for the alleged deliberate indifference to Plaintiff's medical situation. Furthermore, the facts as stated do not indicate criminal recklessness requisite for proving deliberate indifference. In any event, the allegations against Defendants Holst and Cooper are also founded in the difference of opinion regarding course of treatment as described previously, and although such facts may indicate negligence or malpractice, they fail to rise to the level of a constitutional violation. Therefore, the Court finds Plaintiff fails to state a claim against Defendants Holst and Cooper.

   *D.*     *Analysis Summary*

As presented in Plaintiff's Amended Complaint, Sterling Correctional Facility medical staff examined Plaintiff for the alleged injuries on at least seven different occasions at Plaintiff's request. Defendants Dr. Fortunato, P.A. Webster, P.A. Stock, and P.A. Rittenhouse, as medical staff for the Sterling Correctional Facility, were free to exercise their independent professional judgment in examining and treating Plaintiff. Plaintiff's opinion that Defendants' medical conclusions were incorrect or contrary to the recommendations of the doctors who examined him at Denver Health

does not implicate a constitutional violation, in that Plaintiff received medical attention due under the Eighth Amendment.

The Court recognizes the gravity of the injury Plaintiff alleges, namely his loss of hearing, which he believes results from Defendants not facilitating his appointments set by Denver Health. However, Tenth Circuit precedence demonstrates Plaintiff's claim, rooted in a difference of medical personnel opinion, does not rise to the level of cruel and unusual punishment. This determination does not necessarily bar other claims, for example medical malpractice or negligence, but such claims are not actionable under § 1983. Therefore, the Court finds Plaintiff fails to make sufficient factual allegations demonstrating Defendants displayed "a deliberate refusal to provide medical attention, as opposed to a particular course of treatment,"[2] constituting deliberate indifference in violation of Plaintiff's constitutional rights.

## IV. Qualified Immunity

The Court must analyze both the substance of the pleadings and the course of the proceedings to determine whether the suit is for official or individual liability. *Pride v. Lamb*, 997 F.2d 712, 715 (10th Cir. 1993). Plaintiff does not clearly designate whether the Defendants are being sued in their official or individual capacities; however, his pleadings indicate he is seeking monetary damages as relief. Plaintiff's request for monetary damages, and not injunctive and declaratory relief, provides a strong indicator as to whether the suit seeks individual rather than official liability. *Cf. id*. Additionally, Defendants raise a qualified immunity defense, which would support a finding that the Plaintiff sues Defendants in their individual capacities. *See id.* at 715-16.

In an official capacity suit against a local government official, the real party in interest is not the named official but the local governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Myers*

---

[2] *Fleming*, 2000 WL 374295, at *2.

*v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998). "Only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). State law, as reflected in statutes, ordinances, regulations, city charters or other similar compilations, determines who has "final policy making authority." *Id.* Nothing in the record demonstrates that any of the named Defendants have final policy making authority. Accordingly, a determination that the Plaintiff has sued these Defendants solely in their individual capacities is warranted.

With regard to Plaintiff's claims in this matter, the Defendants argue that they are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from individual liability under § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> In evaluating a claim for qualified immunity, the court must first determine whether, considered in the light most favorable to the plaintiff, the facts alleged state the violation of a [statutory or] constitutional right. . . . If so, the court must go on to determine whether the [statutory or] constitutional right was clearly established at the time of injury. . . . If the answer to either of these questions is no, the defendant is entitled to qualified immunity.

*PETA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1207 (10th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).

Here, the Court finds Plaintiff fails to state a constitutional claim of Defendants' deliberate indifference. Because the facts alleged do not state a violation of a statutory or constitutional right, the Defendants are entitled to qualified immunity.

**V.   Conclusion**

Accordingly, for the reasons stated above, the Court RECOMMENDS that Defendants'

Motion to Dismiss [filed June 26, 2008; docket #18] be **granted**.[3]

Dated at Denver, Colorado, this 2nd day of October, 2008.

BY THE COURT:

s/Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

[3]Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).